UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LUCAS A. TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14CV2123(JCH) |
| | ) |
| BNSF RAILWAY COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Lucas Tucker's Motion to Remand. (ECF No. 14). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

Tucker initiated this action on November 18, 2014 by filing a Petition in the Circuit Court of St. Louis County, Missouri. (Removal Notice, ECF No. 1, ¶ 1). Tucker claims he was fired by Defendant BNSF Railway Company ("BNSF") in violation of the Missouri Human Rights Act ("MHRA"). (Petition, ECF No. 3, ¶¶ 33, 34). According to the Petition, Tucker was employed by "Defendant BNSF from August 1, 2005 to December 3, 2012."[1] *Id.* ¶ 9. "In 2007, [Tucker] suffered an injury to his left eye. The injury resulted in the partial loss of vision in the left eye. [Tucker] also experienced depression and migraine headaches." *Id.* ¶ 11. Tucker claims these conditions rendered him "disabled within the meaning of the MHRA." *Id.* ¶ 14.

"From January 3, 2011 to June 4, 2012, [Tucker] was on medical leave from work in connection with his medical conditions. Defendants knew about [Tucker's] disabilities and knew he had a record of such disability or disabilities." *Id.* ¶ 16. Tucker received clearance to return to work from Dr. John Memken, Tucker's medical doctor, on or about June 4, 2012. *Id.* ¶ 17.

---

[1] The remaining defendants allegedly acted on BNSF's behalf in various capacities. (Petition ¶¶ 3-5, 7).

1

"Despite the medical documentation provided by Dr. Memken, Defendants refused to allow [Tucker] to return to work on June 4, 2012." *Id.* ¶ 19. Instead, Defendants requested more information and initiated an investigation, which ultimately resulted in Tucker's termination. *Id.* ¶¶ 20-32. Tucker claims this termination resulted at least in part from Defendants' perception that he was disabled and as retaliation for Tucker's complaints about Defendants' refusal to return him to work, in violation of the MHRA. *Id.* ¶¶ 34-35.

Defendants timely removed to this Court on December 31, 2014. According to Defendants, the Court has original jurisdiction in this matter because Tucker's "claim that BNSF refused to return him to work is completely pre-empted by the" Railway Labor Act ("RLA"). (Removal Notice ¶ 9). Tucker contests the Court's subject-matter jurisdiction and seeks remand to the Circuit Court of St. Louis County. (Motion, ECF No. 14, at 1).

## DISCUSSION

Tucker contends this matter should be remanded because it does not involve a federal question. He asserts that "the ultimate issue is whether [Tucker's] disability discrimination claim under the MHRA involves interpretation or application of a [collective bargaining agreement ("CBA")], or whether [Tucker's] claim is independent of the CBA." (Remand Support Memo, ECF No. 15, at 6). This is the ultimate issue, according to Tucker, because interpretation of a CBA presents a federal question under the RLA, but "it is well established that a state law cause of action is not preempted by the RLA if it involves rights and obligations independent of a CBA." *Id.* at 6 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)). Since Tucker's claim is purely a question of rights and obligations under the MHRA, there is no federal question on which to base federal subject-matter jurisdiction.

Defendants respond that Tucker's state claim presents a federal question because "even suits based on torts, rather than on breach of a CBA, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" (Defendant Response, ECF No. 17, at 4 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)). Defendants contend that Tucker has pleaded such a claim because resolution of his claim will necessarily involve interpretation of a Memorandum of Agreement between BNSF and Tucker's union ("MOA"). (Defendant response at 6).

"Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand." *Manning v. Wal-Mart Stores East, Inc.*, 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004) (citing *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)). The party invoking federal jurisdiction and seeking removal has the burden of establishing jurisdiction by a preponderance of the evidence. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781-82 (8th Cir. 2009); *see also Nicely v. Wyeth, Inc.*, 2011 WL 2462060 at *2 (E.D. Mo. Jun. 17, 2011).

A civil action brought in state court may be removed to the proper district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The alleged basis for federal jurisdiction here is "federal question" jurisdiction. 28 U.S.C. § 1331. The federal question statute grants to district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted).

One situation in which a claim can be said to arise under federal law is when it is a "minor dispute" under the RLA, meaning a controversy "over the meaning of an existing

collective bargaining agreement in a particular fact situation.'" *Norris*, 512 U.S. at 253 (quoting *Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33 (1957)). This is because minor disputes, even if facially pleaded only under state law, have been pre-empted by the RLA. *Id.* The pivotal question in determining whether a state law claim qualifies as a pre-empted minor dispute is whether the "state-law claim is dependent on the interpretation of a CBA . . . ." *Id.* at 262. There is no federal pre-emption, however, if the state claim is "independent of the collective bargaining agreement." *Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269, 274 (8th Cir. 1994) (citing *Norris*, 512 U.S. 246).

The parties have cited two Eighth Circuit cases that more clearly define the contours of this inquiry. Tucker contends that *Taggart* is controlling here. In *Taggart*, a flight attendant was placed on medical leave after undergoing a hip replacement surgery. 40 F.3d at 270. After a medical examination, the defendant airline determined that the flight attendant could no longer perform her duties and therefore terminated her. *Id.* The flight attendant filed suit under the MHRA, alleging that the airline "had unlawfully terminated her because it had 'perceived' that she had a physical impairment without regard to whether her perceived impairment interfered with her job performance or whether the perceived impairment could be reasonably accommodated." *Id.* "The complaint did not refer to any provisions of the collective bargaining agreement." *Id.* Nevertheless, the airline asserted that interpretation of the CBA would be necessary because the flight attendant "was placed on medical leave and later terminated pursuant to that agreement." *Id.* at 272. The Eighth Circuit found the flight attendant's claim was not an RLA minor dispute because the CBA "was not the 'only source' of [the flight attendant's] right not to be terminated wrongfully" and because the mere potential of a claim under the CBA is not enough to qualify a claim as a minor dispute. *Id.* at 274. The court also found to be

4

irrelevant any determination of whether the flight attendant's "termination was justified by the collective bargaining agreement." *Id.*

Defendants respond that *Davis v. Johnson Controls, Inc.*, 21 F.3d 866 (8th Cir. 1994) provides better guidance in this case than *Taggart*. In *Davis*, a production worker at a manufacturing company suffered a back injury. *Id.* at 867. About one year later, the production worker's physician said he could return to work. *Id.* The manufacturing company did not allow the worker to return, and the production worker brought suit under the MHRA. *Id.* The manufacturing company contended the production worker's claim was pre-empted by § 301 of the Labor Management Relations Act ("LMRA"), to which the interpretation-dependent standard also applies, since interpretation of a CBA was necessary. *Id.* at 868. This was so, according to the manufacturer, because the production worker made a claim that he was discriminated against based on a "handicap." *Id.* To show the existence of a handicap under the MHRA requires demonstration of a condition "'which *with or without reasonable accommodation* does not interfere with performing the job.'" *Id.* (emphasis in original) (quoting Mo. Rev. Stat. § 213.010(10)). Citing the Missouri regulation that defines "reasonable accommodation," the manufacturing company asserted such a demonstration could only be made through an analysis of the manufacturing company's obligations under the CBA. *Id.* (citing 8 CSR § 60-3.060(1)(G)(3)(D)). The Eighth Circuit agreed, noting specifically that the reasonable-accommodation determination would require an examination of the seniority rights set forth in the CBA. *Id.*

Defendants contend that Tucker's claim is substantially similar to the claim in *Davis* because Tucker "claims Defendants refused to return him to work following his medical leave."

5

(Defendant Response at 6). This claim, Defendants assert, will require interpretation of the MOA because the MOA

> outlines detailed requirements for employees to return to work after medical leave. More specifically, this Court will need to interpret the MOA to determine whether, "*with or without a reasonable accommodation*," [Tucker's] vision interfered with his ability to return to work and perform his job duties. As recognized in *Davis*, and consistent with 8 Mo. Code Regs. Ann. 60-3.060(1)(G)(3)(D), this Court must look to the provisions of any bona fide CBA in making this determination.

*Id.* (emphasis in original) (internal citation omitted). "This Court will also need to interpret the MOA to determine whether BNSF was entitled to require additional information" beyond the approval of Dr. Memken before allowing Tucker to return to work. *Id.*

Defendants' latter contention is foreclosed by *Taggart*. The argument is essentially that Defendants followed the procedure required under the MOA when they terminated Tucker, and that they were justified in firing Tucker when he refused to provide that information. Under *Taggart*, as noted above, the justification for termination under the MOA is irrelevant to the determination of whether Tucker's MHRA claim depends upon an interpretation of the MOA.

Defendants' former contention is unavailing because it rests on an overbroad reading of *Davis*. The *Davis* court found only that interpretation of the CBA was necessary in that case, not that the reasonable-accommodation determination under the MHRA always requires interpretation of a bona fide CBA. The MHRA defines "disability" as a "physical or mental impairment . . . which with or without reasonable accommodation does not interfere with performing the job" at issue. Mo. Rev. Stat. § 213.010(4). Among the relevant factors used to determine whether an accommodation is reasonable are "[t]he size and nature of a business, including . . . the structure and composition of the work force" and "[t]he ownership interest in the subject of the proposed accommodation including the authority to make the accommodation

under the terms of any *bona fide* agreement such as a lease." 8 CSR 60-3.060(1)(G)(3)(B)&(D). It is thus undoubtedly correct that the determination will sometimes involve interpretation of a CBA. But unlike the manufacturing company in *Davis*, who pointed to a CBA provision establishing seniority rights, Defendants make no attempt to relate the MOA to the reasonable-accommodation inquiry. Defendants' broad assertion that resolution of Tucker's claim will depend upon an interpretation of some unspecified portion of the MOA is insufficient to demonstrate by a preponderance of the evidence that this case involves a minor dispute under the RLA. The Court therefore is not satisfied that subject-matter jurisdiction exists in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Tucker's Motion to Remand, (ECF No. 14), is **GRANTED**, and this case is **REMANDED** to the Circuit Court of St. Louis County, Missouri. A separate order of remand will accompany this Memorandum and Order.

Dated this 27th day of February, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE